IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| USABLE LIFE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:08-CV-442-WKW [WO] |
| | ) | |
| JEANETTE L. BROWN, *individually,* | ) | |
| *and as Administrator of the Estate of* | ) | |
| *Ted W. Brown, deceased, et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff USAble Life ("USAble") is bringing this interpleader action against Defendants Noreen Brown and Judy Brown[1] to determine the proper beneficiary of an employee benefit plan governed by the Employment Retirement Income Security Act of 1974 ("ERISA" or "Act"), 29 U.S.C. §§ 1001-1461.[2] USAble moved to be dismissed from the action (Mot. Dismiss (Doc. # 41)), and Noreen Brown moved for summary judgment (Mot. Summ. J. (Doc. # 43)). No responses were filed to either motion.[3] Based upon careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the motion for summary judgment is due to be denied, and judgment is due to be entered in favor

---

[1] Defendant Jeanette L. Brown was dismissed from the case by a joint stipulation of dismissal. (Docs. # 27 & 28.)

[2] There is no dispute that ERISA governs the benefit plan.

[3] The Briefing Order (Doc. # 40) set the deadlines for responses, which have passed.

of Judy Brown as a matter of law.  The motion to dismiss is therefore due to be denied as moot.

## I.  JURISDICTION

Subject matter jurisdiction is exercised pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.  The parties do not contest personal jurisdiction or venue, and there are allegations sufficient to support both.

## II.  FACTUAL AND PROCEDURAL HISTORY

At the time of his death on July 13, 2007, Ted W. Brown ("Decedent") was a participant in an employee welfare plan ("Plan") offered by the Decedent's former employer, Southern Overhead Door, Inc.[4]  The Plan provided life insurance coverage funded by a policy insured by USAble, and previously insured by American Pioneer Life Insurance Company.  The Decedent's former spouse, Noreen Brown, filed a written demand for the policy benefits based upon a Final Judgment of Divorce ("Divorce Judgment"), entered January 7, 2002, in Circuit Court of Jefferson County, Alabama (Divorce Judgment (Mot. Summ. J. Ex.1)).  Prior to this action being filed, she made a demand on USAble for the policy proceeds, claiming that the Divorce Judgment gives her a vested equitable interest in

---

[4] Record citations are given only for disputed or unclear facts.  The governing complaint is the Amended Complaint for Interpleader (Doc. # 14), filed July 18, 2008.

them.  (Ltr. to USAble's Claims Dep't, Nov. 29, 2007 (Am. Compl. Ex. C).)[5]  The Decedent's widow, Judy Brown, also made a claim, on the basis that she is the named beneficiary under the Plan, and therefore is entitled to the policy proceeds.  USAble filed this interpleader action to resolve the competing claims for the available amount, $78,945.21, deposited with the court.  (Docs. # 32, 36.)

USAble moved to be discharged from any liability and dismissed from the case because it deposited with the Clerk of the Court the amount for which it could be liable.  (Mot. Dismiss 4; Docs. # 32, 36.)  USAble also requested a permanent injunction restraining any actions against USAble pertaining to the proceeds under the policy.[6]  (Mot. Dismiss 4.)  Noreen Brown moved for summary judgment on the basis that the Divorce Judgment is a qualified domestic relations order ("QDRO") under ERISA and is therefore superior to Judy Brown's claim.  (Mem. Supp. Mot. Summ. J. 4-6 (Doc. # 43 Ex. A).)  The motions are ripe for resolution.

---

[5] The letter from Noreen Brown's counsel states the following:

> I am writing to make a claim for this policy on behalf of my client, Noreen Brown.  Case law for the State of Alabama clearly indicates that the divorce decree gave Noreen Brown a vested equitable interest in the proceeds of this insurance policy so that any subsequent change of the named beneficiary would not establish that person's rights as superior to hers.

(Ltr. to USAble's Claims Dep't.)

[6] See USAble's accompanying brief in support for more details.  (Doc. # 42.)

### III.  STANDARD OF REVIEW

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Under Rule 56, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### IV.  DISCUSSION

Determining the proper beneficiary under USAble's policy depends on the resolution of one issue, which law to apply: ERISA or state law.[7]  If ERISA governs, the named beneficiary under the Plan, Judy Brown, is entitled to the policy proceeds.  If the Divorce Judgment governs and Alabama law applies, Noreen Brown may have a claim to the policy proceeds under Alabama matrimonial, contract and probate law.  Because ERISA governs, the court expresses no opinion on the latter circumstance.

ERISA preempts any state law that "relate[s] to any employee benefit plan" described by the Act, with statutorily prescribed exceptions. 29 U.S.C. § 1144(a); *Brown v. Conn. Gen. Life Ins.*, 934 F.2d 1193, 1195 (11th Cir. 1991).  Those exceptions, however, include QDROs, which ERISA explicitly exempts from its general preemption provision.

---

[7] In other words, there are no material facts in dispute.

4

§ 1144(b)(7).[8]  Thus, if the Divorce Judgment in this case were a QDRO, ERISA would not govern and Noreen Brown's claim would proceed under Alabama law.[9]

ERISA[10] defines a QDRO as a domestic relations order[11]:

---

[8] § 1144(b)(7) applies to all QDROs, regardless of the type of plan. *Metro. Life Ins. Co. v. Bigelow*, 283 F.3d 436, 440 n.3 (2d Cir. 2002) ("Unlike ERISA's anti-alienation provision, 29 U.S.C. § 1056(d), which applies only to pension plans, neither the general preemption provision, § 1144(a), nor the provision that creates the QDRO exception to preemption, § 1144(b)(7), is similarly limited.  We therefore join the other circuits to have considered this in concluding that the § 1144(b)(7) exception to ERISA preemption applies to all QDROs, whether they involve either pension or welfare plans.  If the Judgment [in that case] is a QDRO, it is exempt from ERISA preemption with respect to both the life insurance and pension plans." (citations omitted)); *Metro. Life Ins. Co. v. Wheaton*, 42 F.3d 1080, 1084 (7th Cir. 1994).

[9] *Brown*, 934 F.2d 1193, is not to the contrary.  In *Brown*, the majority found ERISA preempted a state-court suit and therefore, was properly removed to federal court by a decedent's former spouse.  *Id.* at 1193, 1196.  She had claimed she was entitled to policy proceeds because of a divorce decree and sued for an order requiring she be paid the proceeds.  *Id.* at 1194.  The majority held that the claim was preempted because of ERISA's general preemption provision.  *Id.* at 1195-96.  The state-law claim related to a welfare plan under ERISA.  *Id.* at 1195.  In dissent, Judge Johnson argued that jurisdiction was absent because the case involved a QDRO and § 1144(b)(7) exempts QDROs from preemption.  *Id.* at 1197 (Johnson, J., dissenting).  The majority stated nothing, however, that disputed § 1147(b)(7) was an exception for QDROs but rather reached no finding on whether the divorce decree was a QDRO, *id.* at 1197 (majority opinion), and thus the § 1144(b)(7) exception was not relevant.  Indeed, neither the majority opinion nor the lower court opinion, No. CV89-H-1430-S, 1990 WL 596927 (N.D. Ala. May 17, 1990), addressed whether there was a QDRO in that case.  Judge Johnson only states in conclusory language that the case involved a QDRO.  934 F.2d at 1198 (Johnson, J., dissenting).  Based on the posture of and arguments in *Brown*, therefore, it cannot be said to stand for the proposition that QDROs for non-pension plans are subject to the general preemption provision.

[10] ERISA was amended by the Retirement Equity Act of 1984 ("REA") to include the QDRO language.  *See Bigelow*, 283 F.3d at 441.

[11] A "domestic relations order" is "any judgment, decree, or order (including approval of a property settlement agreement) which –

> (I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and
> (II) is made pursuant to a State domestic relations law (including a community property law).

§ 1056(d)(3)(B)(ii).  The Divorce Judgment is a domestic relations order: It relates to the provision of marital property rights to a former spouse and is made pursuant to Alabama domestic relations law.  Whether it is a *qualified* domestic relations order is a cat of another stripe.

> (I) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and
> (II) with respect to which the requirements of subparagraphs (C) and (D) are met . . . .

§ 1056(d)(3)(B)(i). Thus, a domestic relations order is a QDRO "only if [it] clearly specifies –

> (i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
> (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
> (iii) the number of payments or period to which such order applies, and
> (iv) each plan to which such order applies.

§ 1056(d)(3)(C). Noreen Brown argues that her Divorce Judgment substantially complies with all of those requirements (as well as, impliedly, with those in § 1056(d)(3)(B)), and that Congress clearly intended for a QDRO to prevail over a beneficiary designation. (Mem. 5-7.)

To qualify as a QDRO, however, a divorce judgment must create or recognize an alternate payee's right to, or assign to her the right to "receive all or a portion of the benefits payable with respect to a participant *under a plan*." § 1056(d)(3)(B)(i)(I) (emphasis added). It also requires that the judgment clearly specify "each plan to which such order applies." § 1056(d)(3)(C)(iv). The Divorce Judgment in this case fails on both accounts.

The Divorce Judgment states the following under the subsection "Life Insurance":

> The Husband shall provide for the use and benefit of the Wife, life coverage on his life of not less than Eighty Five Thousand & No/100 Dollars ($85,000) death benefits. The Husband shall name the Wife as trustee and shall provide

> the Wife proof of continuing coverage at reasonable intervals, and shall take no action so as to diminish or encumber the death benefits payable thereunder. This provision constitutes the Husband's consent for the release of such information to Wife in the event he fails to provide it.

(Divorce Judgment ¶ 8.) This language fails to qualify the Domestic Judgment as a QDRO because it does not create or recognize a right in, or assign a right to, benefits payable "with respect to a participant *under a plan*." § 1056(d)(3)(B)(i)(I) (emphasis added). There is no reference to a participant (the Decedent) *who is under a plan*, nor to any sort of a "current plan," nor to any insurance policy that contemplates the one under which benefits are claimed now. Moreover, the existing policy, at the time of the divorce, calls for an $85,000 policy. Thus, the reference to a policy in the divorce decree could not have been to the $75,000 policy. The Divorce Judgment's language is at best ambiguous as to whether it is addressing a current plan, or a future policy for which "[t]he Husband *shall* provide."[12]

The paragraph also fails to clearly specify each plan to which it applies. In fact, it refers to no specific plan whatsoever.[13] *Cf. Bigelow*, 283 F.3d at 439, 444 (finding that plans were sufficiently identified in a settlement agreement even though neither was named because they were identified as "a General Electric insurance plan which consists of group life insurance, disability death and insurance for the dependent children," and "any retirement benefits . . . attached to this G.E. program"); *Metro. Life Ins. Co. v. Wheaton*, 42 F.3d 1080,

---

[12] It appears that the Decedent was under the Plan since July 31, 1994 (Certificate of Insurance (Mot. Summ. J. Ex. 2)), but that fact does not mitigate for qualifying purposes the absence of a specific reference to a participant who is under a plan.

[13] *See also R.A.F. ex rel. Woodall v. S. Co. Pension Plan*, No. 2:07-cv-192, 2008 WL 2397391, at *8-9 (M.D. Ala. June 10, 2008) (Watkins, J.).

1084 (7th Cir. 1994) (finding the "failure to name the plan . . . a little more troublesome [than the failure to name children's addresses]" but finding that this QDRO requirement was satisfied because the life insurance was identified as "'the life insurance which is presently carried through his/her employer,' and this designation permits the identification of the plans to which the decree applies without significant ambiguity").[14]

---

[14] The Eleventh Circuit has not interpreted the QDRO requirements, but the statute itself states that a domestic relations order is a QDRO "only if such order clearly specifies" items such as the plan to which the order applies. The Tenth Circuit, in interpreting identical QDRO language in the Internal Revenue Code and in interchanging its analysis of that statute with interpretations of ERISA, stated the following in response to *Wheaton*, where the court "balked at imposing a strict rule of particularity":

> While we are mindful of the Seventh Circuit's concerns, we do not agree that the QDRO specificity requirements should be construed this liberally. First, relaxing the requirements of section [26 U.S.C. §] 414(p)(2) – or, as *Wheaton* seems to suggest, eliminating them altogether in some cases – does violence to the plain meaning of the statute. Nowhere in section 414(p) has Congress implied that its factual requirements are optional; indeed, the language rather plainly states that a QDRO "*must* clearly specify certain facts." I.R.C. § 414(p)(2) (emphasis added). To accept anything less than what section 414(p)(2) expressly requires would contravene the Supreme Court's frequent admonition that courts must not read language out of a statute.

*Hawkins v. Comm'r*, 86 F.3d 982, 992 (10th Cir. 1996). This logic seems equally applicable in interpreting the identical QDRO language in ERISA. *See Hamilton v. Wash. State. Plumbing & Pipefitting Indus. Pension Plan*, 433 F.3d 1091, 1097 (9th Cir. 2006) (noting that although the court has "rejected an unduly narrow reading of [the ERISA QDRO] requirements," the court "ha[s], however, also echoed the Tenth Circuit's concerns that an overly expansive interpretation may render the specificity requirements toothless," (citing *Hawkins*)); *Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1160 (9th Cir. 2000) (O'Scannlain, J., dissenting) (citing *Hawkins* and emphasizing that the requirements must be clearly specified, and noting that "courts are without authority to revise the statute as it was enacted by Congress"); *Hurwitz v. Sher*, 982 F.2d 778, 781 (2d Cir. 1992) (in interpreting related language from the REA, noting that the court "cannot say that just because Congress intended to protect spouses who have been longterm partners, it meant to permit the casual disenfranchisement of newly-weds" and noting that the "unambiguous statutory language controls except in those 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters'" (quoting *Griffen v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982))).

Because the Divorce Judgment fails to qualify as a QDRO, the ERISA preemption applies, and Judy Brown, the named beneficiary under the plan, is entitled to the policy proceeds as a matter of law.

## V.  CONCLUSION

Accordingly, it is ORDERED that:

(1)     Noreen Brown's Motion for Summary Judgment (Doc. # 43) is DENIED;

(2)     Judy Brown is entitled to judgment in her favor as a matter of law.  An appropriate judgment will be entered; and

(3)     USAble's motion to dismiss (Doc. # 41) is DENIED as moot.

DONE this 24th day of March, 2009.

                        /s/   W.  Keith Watkins
                 UNITED STATES DISTRICT JUDGE

Case 2:08-cv-00442-WKW-SRW   Document 45   Filed 03/24/09   Page 10 of 10